## LAWHORN *v.* THE STATE.

1. Under the evidence the jury were authorized to find the defendant guilty of the crime charged.
2. The exceptions to the portions of the court's charge submitting to the jury the question as to whether or not the defendant was present aiding and abetting, commanding and counselling the act done which resulted in the death of the decedent, because there was no evidence to authorize these charges, is without merit; there being evidence from which the jury were authorized to find that the homicide was murder, and that the defendant was present aiding and abetting the act done by the person who actually fired the shots which caused the death of the person charged to have been murdered.
3. The court did not err in charging the jury that if they found that the decedent, on the occasion under investigation was endeavoring to take the life of the defendant or his brother who was present, the latter being the person who fired the fatal shots, or was endeavoring to commit a felony on either, then if under such circumstances there was a command to shoot, directed by the defendant to his brother, the defendant was in his rights and the killing of the decedent was justifiable.
4. If the defendant desired a more extended and elaborate charge upon the subject of his participation in the felonious design of the person who actually fired the fatal shots that resulted in the death of the party murdered, he should have requested it in writing, as the court's charge upon that subject was sufficient in the absence of a written request.
5. The statement of the contentions of the defendant, in the absence of a written request for a fuller statement of those contentions, was sufficient to meet the requirements of the law.
6. Under the evidence the law of voluntary manslaughter was not involved, and the court did not err in failing to charge upon that subject.

No. 4125. JUNE 13, 1924.

Murder. Before Judge Eve. Tift superior court. December 1, 1923.

*J. B. Murrow, W. B. Bennet,* and *Perry & Tipton,* for plaintiff in error.

*George M. Napier, attorney-general, R. S. Foy, solicitor-general, T. R. Gress, assistant attorney-general, C. A. Christian,* and *R. D. Smith,* contra.

BECK, P. J. The defendant, W. Floyd Lawhorn, was indicted for the murder of S. S. Monk, and was tried at the July term, 1923, of Tift superior court. The jury trying the case returned a verdict of guilty, with a recommendation. A motion for new trial was overruled. The brother of the defendant, Sim Lawhorn, was indicted for the same offense at a previous term of the court, and was convicted. He made a motion for a new trial, which was overruled, and the case by bill of exceptions was brought to this court, and the judgment refusing a new trial was affirmed. 155 *Ga.* 373. The State at the trial of the present case contended that Sim Lawhorn, the brother of this defendant, actually fired the shots that killed the decedent, and that Floyd Lawhorn was present, aiding and abetting his brother. The case against the defendant rests largely upon circumstantial evidence. By one witness for the State it was proved that "He [the defendant] stated that his brother Sim had shot Mr. Monk with a 'thirty-eight special.' Floyd and Sim Lawhorn stated that Mr. Monk was lying about where the horse was hitched. When we got there I saw that Mr. Monk was dead. . . Floyd stated that Mr. Monk was trying to get his pistol out of his pocket, and he told his brother Sim to shoot him." It appears that Monk had gone to the field where the two brothers were, on the day upon which the shooting occurred. He had approached within a few feet of them. Floyd in his statement claimed that Monk, the decedent, after making an abrupt remark in regard to gathering cantaloupes, said: "I don't give a damn about cantaloupes. I came over here to settle this trouble." He also said that when Monk was making this remark he was pulling a pistol out of his pocket; that he was watching him, and called out to his brother, "He is fixing to kill us, look out;" that Monk almost immediately fired at Sim, and the latter fired several times at Monk—four or five times in rapid succession. He also stated that he took the pistol and carried it along for protection, and went off to go to Mr. Kennedy's in order to telephone the officers to come out and investigate the matter. He then told where he threw the pistol away.

The testimony of Sim Lawhorn, who was introduced by the de-

fendant, as to the circumstances immediately attending the shoot-
ing, was, in substance, the same as that contained in the statement
of the defendant on trial. Another witness introduced by the de-
fendant testified that he saw the decedent and the two brothers
standing close together, saw Monk stretch out his arm as if direct-
ing his pistol; saw the smoke from his pistol; and gave other
testimony tending to show that Monk made an attack with a
deadly weapon and was shot after having fired his own pistol.

The jury returned a verdict of guilty. They evidently gave no
credit to the statement of the defendant and to the testimony of
his brother and the other witness who claimed to be an eye-witness
and described the circumstances attending the shooting. Under
all the facts of the case the jury had the right to accept as true
the theory of the State, that Monk was not the aggressor, that
he made no assault upon either of the two brothers Lawhorn, and
that the killing was committed without any adequate provocation.
The fact that two witnesses testified for the defendant to facts and
circumstances that showed that the shooting by Sim Lawhorn was
in self-defense did not require the jury to find this theory of the
defense to be true. It was for them to say whether the testimony
of Durden, who swore that he saw Monk with a pistol in his hand
and saw his hand go up as if he was aiming the pistol, and that
he saw the smoke as the pistol fired, was true, or whether under
all the other facts and circumstances proved they should reject
Durden's testimony entirely. We will not comment upon the
improbability of Durden's testimony. That was a question for
the jury. It may be mentioned, however, that Durden appears
to have said nothing about seeing this tragedy until long after-
wards, until after Sim Lawhorn had been tried and convicted;
that he made no mention of it to the people he met that day.
And the jury might well have rejected the reasons he gave for
saying nothing about it. They were not compelled to reject
his story, but they were fully authorized to do so, and they were
fully authorized to find that his testimony was manufactured, and
manufactured for the purpose of this defense. There was testi-
mony from which the jury could also find that Monk (the de-
cedent) was not armed when he went to the field; that the pistol
with one barrel discharged, which was lying near his hand when
certain witnesses in the case went to where his body was, had been

placed there by some one else—had been "planted," in the language of one of the witnesses. The defendant himself had said to Ross, one of the witnesses for the State, that he called out to his brother that Monk was about to kill them, and told his brother to shoot; and in his statement made at the trial he said: "In the end my brother would not have killed him unless Mr. Monk hadn't tried to kill us, and we were only protecting our own lives; and when I told my brother to shoot, it was to protect his own life; otherwise Mr. Monk would have killed both of us; and I will state further that I am innocent of the charge against me." The jury were authorized to find that he did call out to his brother to shoot, and to disbelieve so much of his statement as claimed that it was done under circumstances which made the killing self-defense. They could believe a part of his statement and reject the balance. There is evidence in the case which authorized them to do so.

There is much evidence in the record, given by numerous witnesses both for and against the State, which it is not necessary to summarize and which we do not attempt to state even in substance; but it ought to be pointed out that there was abundant proof in the evidence and the statement of the defendant, not only that bad feelings existed between these brothers and Monk, but that the feelings were very intense. The defendant claimed that Monk had used them hard. They were his tenants. Some of his cattle had gotten loose and gotten into their crops. They had had a controversy about this. They had been put under a bond to keep the peace. There had been a personal difficulty between Monk and this defendant, not a very long time before the killing. The defendant had said to a named person, "You see he intends to kill us," referring to Monk. The defendant said in his statement that he had heard from a number of people that Mr. Monk intended to kill him and his brother. He also said in his statement, after referring to trouble with a man named Carpenter about certain cattle: "That trouble ended after that, and on Monday I went to the field and we began picking cucumbers. After we picked about two wagon loads, I did not know whether it would be advisable to ship them or not right at that time, and I came to town to see Mr. Coleman and Chandler about it. As I came on this way I met Mr. Monk and Minter Monk just off the Waterloo road as it turns in there by Mr. Hobgood's, and both of them

stated to me that they would kill me before night. I had already heard about the threats this man was making against me, and I heard his threats to run me off and take my crop, and he said he would get them if he had to kill me to do it." ' That the defendant had bad feelings towards Monk, and that this feeling was very intense, the jury were authorized to find. In view of all the facts. and circumstances proved in the case, it seems that no other conclusion could be reached than that the evidence was sufficient to authorize the jury to find the defendant guilty.

In one ground of the motion for a new trial exception is taken to the following charge of the court: "I will further instruct you as to the contention of the State in regard to the proposition of a principal in the second degree to the crime and offense of murder. As I understood the solicitor-general in his speech to the jury, it is not contended that Floyd Lawhorn actually fired the shot which resulted in the death of S. S. Monk. The State does contend, however, that Sim Lawhorn, the brother of the defendant on trial, did wilfully and feloniously and with malice aforethought kill and murder S. S. Monk, and that Floyd Lawhorn, the defendant, was, on the occasion under investigation, present, aiding and abetting the act to be done, in that he did then and there counsel, command, and urge Sim Lawhorn to fire the shot or shots causing the death of S. S. Monk, and is therefore a principal in the second degree to the killing of the deceased. A person may be a principal in an offense in two degrees, or, possibly more clearly stated, in one of the two degrees. A principal in the first degree is the actor or absolute perpetrator of the crime. A principal in the second degree is he who is present, aiding and abetting the act to be done. If you are satisfied from a consideration of the evidence and beyond a reasonable doubt that Sim Lawhorn did wilfully, feloniously, and with malice aforethought kill and murder S. S. Monk, and you further find, that is, you become satisfied beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis save that of the guilt of the defendant, Floyd Lawhorn, as the State relies upon circumstantial evidence for a conviction, that Floyd Lawhorn was present, aiding and abetting the commission of the crime of murder, if you find such crime was committed, then it would be ,your duty to find the defendant guilty, as charged in the indictment, as principal in

the second degree." This is excepted to upon the ground that there was no evidence upon which to base the finding that the defendant was guilty of murder in the second degree, "there being no evidence of any overt act on his part that could be construed or classed as aiding and abetting the commission of the crime of murder, and no evidence of any words used by the defendant that could be consistently construed as supporting the charge that he (the defendant) did then and there counsel, command, and urge Sim Lawhorn to fire the shot or shots causing the death of S. S. Monk." In view of the entire evidence in the case and of those portions which we have quoted above, the exception is without merit. If Monk came to the field where these two brothers, Floyd and Sim, were standing, and if, as the jury had a right to find, he made no attack or assault upon them, did nothing to justify acts of aggression on their part, and this defendant, Floyd Lawhorn, said to his brother, "He is going to kill us; shoot him," and his brother, being armed with a pistol and having it in his hand, immediately shot and killed Monk, the jury had the right to find that the defendant was guilty of being present, aiding and abetting the act which constitutes the basis of the charge against this defendant. And when he called upon his brother to shoot, such a call could be regarded by the jury as commanding and urging the act.

There are other grounds of the motion, based upon the contention that the evidence did not authorize a charge submitting to the jury the question as to whether, if the killing of Monk was murder, the defendant was present, aiding and abetting the criminal act. In substance, these exceptions are the same, though stated in different forms; and what we have said above applies to all of those exceptions which raise the contention that the court erred, because there was no evidence to authorize it, in submitting to the jury the question as to whether or not Floyd Lawhorn was guilty of murder in the second degree, because he was present, aiding and abetting the act, and because he counseled and urged the doing of the act.

It is insisted in another ground of the motion that the court erred in failing to charge the jury, in effect, that "Mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence

in the perpetration of the crime by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing." And the movant insists and contends that "the court having submitted the case to the jury upon the theory that this defendant's brother, Sim Lawhorn, who had been previously tried and convicted of the offense of murder in the transaction here under investigation, was the actual perpetrator of the crime, and that the State was contending that this defendant on trial should be convicted of the same offense as aiding and abetting the actual perpetrator, it was the duty of the court, without any request in writing or otherwise, to instruct the jury in substance and effect as above indicated, and that the failure of the court to do so deprived the defendant in this case of the substantial and material benefit of this instruction." The court having submitted the question to the jury as to whether or not the defendant was aiding and abetting, and having clearly indicated that his conviction would be authorized only if he was present, aiding and abetting the crime committed by the brother, if the defendant had wished the specific instructions here set forth given, he should have made such request.

In the absence of a written request, the court sufficiently charged upon the doctrine of reasonable fears; and if the defendant had desired a more specific application of the law to the facts of the case, as he contended that they were under the evidence, he should have requested it in writing. The court's charge upon the subject of reasonable fears was as follows: "I give you in charge some sections of the Penal Code of Georgia. Section 70 reads as follows: 'There being no rational distinction between excusable and justifiable homicide, it shall no longer exist. (That is not specially material in this case.) Justifiable homicide is the killing of a human being by commandment of the law in execution of public justice (it is not contended in this case that that particular phase is applicable); by permission of the law in advancement of public justice (it is not contended that the defendant could avail himself of that provision of the section, it not being contended that he killed in advancement of public justice); in self-defense, or in defense of habitation, property, or person against one who manifestly intends or endeavors by violence or surprise

to commit a felony on either.' I have explained to you that the relationship of brother and brother places the persons in position to defend one another, òr comes under the principle of law of mutual defense. I charge you section 71: 'A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge.' " The issues involved in this case being considered, that was a sufficient charge upon that subject, in the absence of a written request for a more extended and particular statement of the doctrine.

There was no error, as against the defendant, in charging as follows: "If you find that S. S. Monk was, on the occasion under investigation, then and there endeavoring to take the life of either of the Lawhorns, or was then and there endeavoring to commit a felony on the person of either, then any command to shoot, if you find there was a command or request to do so by Floyd Lawhorn directed to his brother, then the defendant was in his rights and the killing of S. S. Monk was justifiable and the defendant should be acquitted." Nor was this rendered erroneous by the fact that the court had just instructed the jury: "If you believe Floyd Lawhorn was in no way connected with the killing of S. S. Monk, it would be your duty to acquit him."

Under no view of the evidence in this case was the law of voluntary manslaughter involved.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., dissenting.*